# IN THE UNITED STATES DISTRICT COURT 8 FOR THE
## WESTERN DISTRICT
## OF TENNESSEE WESTERN DIVISION

| | |
|---|---|
| REV. GERALD KINER ) | |
| Plaintiff,) v. ) | |
| CITY OF MEMPHIS TENNESSEE, ) | |
| MEMPHIS POLICE ) | DOCKET NO. _____ |
| DEPARTMENT, Officer L Cook (14717), ) | DIVISION _____ |
| OFFICER L LEON (12480), and OFFICER A ) | |
| WILEY (14519); CHIEF CERELYN "CJ" ) | |
| DAVIS, MAYOR JIM ) | **JURY TRIAL DEMANDED** |
| STRICKLAND (in his personal ) | |
| capacity and his capacity as Mayor); in their | |
| roles having joint oversight of the Public | |
| Records Office City of Memphis - Chief Legal | |
| Officer- Jennifer A Sink, Chief | |
| Communications Officer Allison Fouche | |

---

## COMPLAINT FOR DAMAGES

---

COMES NOW, your Plaintiff ("Plaintiff"), Gerald Kiner for this Complaint against the Defendants, CITY OF MEMPHIS TENNESSEE, MEMPHIS POLICE DEPARTMENT, Officer L Cook (14717), OFFICER L LEON (12480), and OFFICER A WILEY (14519 Police Chief Cerelyn J. Davis; MAYOR JIM STRICKLAND (in his personal capacity and his capacity as Mayor); in their roles having joint oversight of the Public Records Office City of Memphis - Chief Legal Officer- Jennifer A Sink, Chief Communications Office  (herein collectively "Defendants"), and in support thereof states as follows:

## INTRODUCTION

$\mathcal{2}$

1) In response to the forcible removal of the plaintiff from the pulpit by three African American (3) Memphis Police Officers [Defendant Officer L. Cook ( 14717) , Defendant Officer L. Leon ( 12480) , Defendant Officer A. Wiley ( 14519) ], an act that transpired in front of his congregation and which terrorized and traumatized the plaintiff, elderly women , small children , amongst others, during the midst of his Sunday morning sermon, and subsequent unlawful detention, this legal action seeks redress for the violation of a clearly established and known constitutional right protecting against arrest or detention without just cause. This lawsuit addresses the deprivation, under the color of statute, ordinance, regulation, custom, or usage, of rights, privileges, equal protection, and immunity guaranteed to the plaintiff by the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, as well as violations under 42 U.S.C.§ 1983, False Imprisonment, False Arrest, Fraudulent Concealment, Negligence, and Malicious Harassment; Monell Claim - 42 U.S.C. § 1983; Conspiracy - 42 U.S.C. § 1983; Spoliation of Evidence and Respondent Superior.

In light of the aforementioned known constitutional violations in the matter at hand, the invocation of the defense of Qualified Immunity by the defendants is not applicable. Qualified Immunity is not a carte blanche shield for every conceivable action. The deliberate and calculated use of unlawfully obtained, false, and fabricated evidence, as well as the subsequent reliance on such evidence to establish probable cause for the plaintiff's detainment, constitutes a clear violation of constitutional and legal norms. The defense of Qualified Immunity does not extend to shield officers engaging in such egregious misconduct that fundamentally undermines the very fabric of constitutional protections.

Secondly, the systemic failure in the City's supervision and oversight of its officers, constituting negligence in ensuring that officers adhere to lawful and ethical standards, raises questions about the city's responsibility and accountability. The defense of Qualified Immunity is intended to protect officials acting in good faith, and if a systematic failure in training and oversight is apparent, it challenges the notion of good faith on the part of the officers and the city. This negation of good faith forgoes any claim to Qualified

Immunity. The legal scrutiny should extend beyond a simple invocation of this defense to ensure that justice prevails and constitutional rights are upheld.

2) In addition, this action is brought pursuant to the Tennessee Governmental Tort Liability Act.

3) Headings used in this Complaint is for convenience purposes only, as Plaintiff is alleging any and all causes of action consistent with the information provided in the entirety of this Complaint.

## CIVIL ACTION

4) This is a civil action for declaratory and injunctive relief and for monetary damages.

## JURISDICTION AND PARTIES

5) Plaintiff is and was, at all times relevant to this action, a resident citizen of Memphis, Shelby County, Tennessee, and is a citizen of the United States of America.



6) Defendant City of Memphis, Tennessee ("Defendant City of Memphis"), is a municipality, duly incorporated under the laws of the State of Tennessee. Defendant City of Memphis, Tennessee, may be served with process by serving the City's Attorney, Jennifer Sink, or current City Attorney, at 125

N. Main Street, Room 336, Memphis, Tennessee38103. Alternatively, this Defendant may be served by serving its Mayor, Jim Strickland. Defendant City of Memphis, Tennessee is a governmental entity as defined by T.C.A.

§29-20-102 and is subject to suit in the Circuit Court of Shelby County pursuant to the Tennessee Government Tort Liability Act and other applicable law.

7) Upon information and belief, all employees, contractors, servants, agents and volunteers of the Memphis Police Department were agents of this Defendant acting in the course and scope of their employment or agency. The Memphis Police Department is and was a division of this Defendant. Any action brought against a municipality is brought pursuant to the Tennessee Government Tort Liability Act as immunity has been removed pursuant to T.C.A. §29-20-101 et seq. including, but not limited to, T.C.A.

§29-20-205. Alternatively, this action is being brought against this Defendant in accordance with the common law of the State of Tennessee.

8) This Court has jurisdiction under 28 USC 1331, federal question jurisdiction.

9) Defendant Chief of Police Cerelyn J. Davis ("Defendant") is an adult resident citizen of Memphis, Shelby County, Tennessee. At all times pertinent hereto,

10) Defendant Davis was the Chief of Police for the Memphis Police Department.

11) Defendant Davis was responsible for the day-to-day operations of the Memphis Police.

12) Department and was the final policy maker with respect to law enforcement operations for the City of Memphis at all times relevant to this action. Defendant Davis was under a duty to operate the policing activities of the Memphis Police Department so as to preserve not only the peace of the City of Memphis, but also to protect its citizens, and to preserve their rights, privileges and immunities guaranteed and secured to them by the Constitutions and the Laws of the United States and/or the State of Tennessee. Plaintiff is bringing this action against Defendant Davis in her official capacity as Chief of Police for the Memphis Police Department.

Defendant Davis may be served at the Memphis Police Department, 170 N. Main Street, Memphis, Tennessee 38103.

13) Defendant Jim Strickland was Mayor at the time of the incidents outlined herein.

14) The Executive Division, led by Mayor Jim Strickland, provided leadership and operational guidelines to all divisions within City government. It also provides direct management of key functional areas such as the Memphis Police Department.

15) The Memphis Police Department violated all major cornerstones of their own Mission Statement during the unconstitutional seizure of Plaintiff including:

**Professionalism-**A commitment to consistently achieve high job performance standards while in public and privately.

**Integrity**– Demonstrating high moral and ethical principles at all times.

**Collaboration-**Striving for excellence by working collectively with our internal and external stakeholders/partners to solve problems.

**Accountability-**Fulfilling our responsibilities by doing what is expected in all situations.

16) Defendant Officer L. Cook ( 14717) may be served at the Memphis Police Department Ridgeway Station - 3840 Ridgeway Rd, Memphis, Tn 38115

17) Defendant Officer L. Leon ( 12480)  may be served at the Memphis Police Department Ridgeway Station - 3840 Ridgeway Rd, Memphis, Tn 38115

18) Defendant Officer A. Wiley ( 14519)  may be served at the Memphis Police Department Ridgeway Station - 3840 Ridgeway Rd, Memphis, Tn 38115

19) Defendant  Chief Communications Officer Allison Fouche - who provides co-oversight of City of Memphis Public Records Office may be served at 125 N. Main St. Room 700 Memphis, Tn 38103

7

20) Defendant Attorney, Jennifer Sink, who provides co-oversight of City of Memphis Public Records Office may be served at 125 N. Main St. Room 700 Memphis, Tn 38103

## **FACTS AND CAUSES OF ACTION**

21)  On the evening of February 18, 2023, at his Collierville residence in the Memphis suburb of Collierville, Tennessee, the Plaintiff contacted the Collierville police due to verbal assault by the mother of his minor son, who, as the custodial parent at the time, was present. Collierville Police Lieutenant- white male- John Harold Banks, prioritizing the safety and welfare of the Plaintiff's minor child, permitted the child to leave with the Plaintiff to his Harbor Town residence in Memphis, Tennessee, while advising the mother to stay at the Collierville home with her two daughters to prevent homelessness.

Despite this decision made by Lieutenant John Harold Banks in the best interest of the child's safety, the mother subsequently filed a false report with the Memphis Police Department, alleging unauthorized removal of the child by the father. Pursuant to T.C.A.39-13-306 (c), it is a valid defense to custodial interference if the person reasonably believed that not removing the child would have posed a clear and present danger to the child's health, safety, or welfare at the time of removal.

22) On the specified evening, following the guidance of Collierville Police Lieutenant John Harold Banks, the Plaintiff, accompanied by his minor son, proceeded to his Harbor Town residence in Memphis, Tennessee. However, prior to reaching his destination, the mother, accompanied by Memphis Police Department North Police Station- white male- officer W. Urbanski, arrived at the Harbor Town home.

Engaging with the Plaintiff through the Ring doorbell camera, Officer W. Urbanski satisfactorily addressed the situation and documented in his police report (Memo #2302008870ME) that the child was safe and adequately nourished. This unequivocal affirmation contradicted the mother's unfounded allegations regarding the child's safety and well-being. Subsequently, Officer W.

Urbanski departed from the scene, extending his wishes for the Plaintiff to have a good night.

This deliberate misrepresentation, coupled with the officers' disregard for the information provided by Memphis Police Department North Police Station officer , W. Urbanski (memo#2302008870ME), who had noted the child's safety, nourishment, and presence with the father hours earlier, suggests a failure to act diligently and a potential malicious agenda against the father. This consistent negligence and intentional oversight should be scrutinized as evidence of the officers' malicious actions, harming the father's rights and interests.

23) Approximately 12 hours later, on Sunday, February 19, 2023, at approximately 11 a.m., the mother once again initiated contact with the Memphis Police Department, filing yet another spurious report. Concurrently, while the Plaintiff attended his church at 4400 Hickory Hill Road, the mother, accompanied by the defendants Officer L Cook (14717), Officer L Leon (12480), and Officer A Wiley (14519), converged upon Plaintiff's residence #3 on Bishop Dale Road, conveniently located merely a minute's walk from the Plaintiff's place of worship.

Upon receiving notification from a church member, Alysee Adams, about the police presence at his residence #3, the Plaintiff promptly departed the church to happily apprise the officers of the events that transpired in the preceding 12 hours. Despite the Plaintiff's diligent efforts to apprise the defendants, including Officer L Cook (14717), Officer L Leon (12480), and Officer A Wiley (14519), of the decisions made by Lieutenant John Harold Banks and Officer W. Urbanski, they exhibited a seemingly predetermined inclination to align with the mother's narrative. This approach exhibited a reckless disregard for pertinent evidence and culminated in the defendants' unwarranted request to see the child.

Complying with their request, the Plaintiff accompanied the female officer to the door, where he

attempted to gain entry. However, as the nanny did not respond, the Plaintiff informed the officer that he presumed both the nanny and the child were asleep. The Plaintiff then informed the officers that he needed to return to the church to preach his sermon, with the understanding that he would return with his keys to facilitate access. Notably, defendants Officer L Cook (14717), Officer L Leon (12480), and Officer A Wiley (14519) raised no objection and permitted the Plaintiff to leave the scene.

Astonishingly, less than 45 minutes later, church video footage and numerous eyewitness testimony will reveal how defendants Officer L Cook (14717), Officer L Leon (12480), and Officer A Wiley (14519) infringed upon the Plaintiff's well-established constitutional rights and caused mass hysteria and distress to Plaintiff and to his congregation by bum rushing the Plaintiff and handcuffing him as the Plaintiff was preaching his Sunday morning sermon. Subsequently, they transported him back to the residence at Bishop Dale Road where the minor child and nanny was. There, they coerced the Plaintiff into opening the door, seized his son, handed the child over to the mother, and released the Plaintiff approximately an hour later.

To justify that corrupt behavior , defendant Officer L Cook (14717) lied in her police report saying the Plaintiff was asked to show them the child but he " refused". Substantiation through police video camera evidence and eyewitness testimony will unequivocally demonstrate that the Plaintiff, escorted to the back door by the female officer who monitored his knocking on the rear door to prompt the nanny to open it, made a full attempt to comply with the officers' requests. This evidence establishes that the police officers intentionally provided false information in the police report. This sequence of events raises significant concerns about the officers' conduct and the potential violation of the Plaintiff's constitutional rights during this distressing episode.

24) In a display of callous disregard for the sanctity of the church and the dignity of the Plaintiff's position, defendants Officer L Cook (14717), Officer L Leon (12480), and Officer A Wiley (14519) callously responded to the inquiry of church security guard LaTerrance Lee from Royal Security. When questioned about their need to enter the building during the Plaintiff's sermon, they callously retorted, "If you don't get out the way, we gonna take you to jail too." This heartless threat underscored their cruel and malicious demeanor, demonstrating a complete

10

absence of accountability or fear of justice.

25) The Officers, devoid of any sense of decency or respect for the Plaintiff's rights, sadistically violated his right to protection from unreasonable seizure during the illegal invasion of his sermon. Their deliberate interruption included the aggressive act of seizing his microphone and forcefully removing him from the pulpit. This act not only displayed a malicious intent but also constituted a flagrant violation of the Plaintiff's civil rights under the Fourth Amendment. Their actions manifested a complete lack of regard for the constitutional protections against unreasonable seizures as enshrined in the United States Constitution.

26) Acting as if they had a warrant for his arrest and exhibiting a complete disregard for the emotional well-being of the Plaintiff and the worship experience of his Congregation, church usher Tameka Burnett attempted to negotiate a brief delay in the officers' disruptive actions. In response, defendant Officer Wiley, distinguished as the masked member of the trio, callously dismissed any semblance of compassion, stating, "Bump that, we bout to get him now!" This heartless declaration underscored their corrupt and authoritarian stance, revealing an utter disdain for the emotional and spiritual well-being of those they targeted. The officers' actions further highlight a deeply entrenched pattern of cruelty, malice, and corruption within their conduct, with no apparent fear of being held accountable for their reprehensible behavior.

27)  In the midst of the reprehensible invasion of the Plaintiff's sacred Sunday worship service, not only did the defendants Officer L Cook (14717), Officer L Leon (12480), and Officer A Wiley (14519) callously trample upon his Fourth Amendment rights with a calculated and forceful disruption, but they also compounded their transgressions by ruthlessly withholding the Plaintiff's Miranda rights in any conceivable form—be it written, oral, or otherwise. This shocking and deliberate deprivation of the Plaintiff's fundamental legal safeguards, coupled with the officers' blatant disregard for basic human decency, serves as an unequivocal testament to their malevolence and a shocking display of unchecked authority. The Plaintiff's nightmarish and harrowing experience, marked by this egregious violation of rights, is further evidence of the officers' reprehensible conduct, which is a catalyst for the Plaintiff's  egregious, unwarranted , and undeserved suffering.

28) Moreover, the actions of defendants Officer L Cook (14717), OFFICER L LEON (12480), and OFFICER A WILEY (14519) transcend mere recklessness; they epitomize a willful and egregious violation of the Plaintiff's civil rights. Their calculated and malicious conduct, executed with a blatant disregard for the Plaintiff's dignity, was unmistakably designed to harass and inflict humiliation upon him, all while brazenly unfolding before his congregation. This flagrant abuse of authority starkly exposes the officers' misconduct and underscores the severity of the civil rights violations perpetrated against the Plaintiff. In this orchestrated spectacle of cruelty, the officers, acting with a disturbing lack of humanity, callously disrupted a sacred worship service, dismantling the Plaintiff's constitutional protections with a shocking display of authoritarian overreach. Their conduct not only inflicted immediate harm upon the Plaintiff but also cast a dark shadow over the very essence of justice and accountability, leaving an indelible mark on the Plaintiff's mental well-being and dignity.

29) In scrutinizing the circumstances under the exacting lens of the Fourth Amendment's rigorous reasonableness standard, it glaringly emerges that the seizure of the Plaintiff—whether purportedly for arrest or proffered under some implausible guise—stands as an unequivocal and egregious transgression against the Plaintiff's sacrosanct civil rights. The egregiousness of this violation underscores a shocking departure from the foundational principles of reasonableness and constitutionality, demanding the most stringent condemnation and redress for the profound affront suffered by the Plaintiff.

30) False imprisonment in Tennessee, as starkly defined, constitutes the intentional and unjustified restraint or detention of an individual. The officers, devoid of any warrant or plausible justification, proceeded without lawful authority, even in the guise of a purported "friendly arrest." This glaring absence of legal foundation is particularly egregious in light of Memphis Police Department North Police Station officer W. Urbanski's documented acknowledgment (Memo #2302008870ME) of the child's safety, well-being, and presence with the father merely 10 hours prior. Such starkly contradicts the officers' subsequent actions, exposing a wanton and reckless disregard for lawful conduct and a conspicuous absence of just cause.

12

The Plaintiff maintains steadfastly that at the initial police confrontation, he was not engaged in any unlawful activity, and subsequent to the altercation's initiation, he refrained from any conduct that would have warranted his arrest. The officers, therefore, embarked on a course of action marked by intentional and unjustified restraint, starkly violating the Plaintiff's rights and showcasing an alarming disregard for legal propriety. This egregious departure from the foundational tenets of the law demands resolute condemnation and redress for the Plaintiff's unwarranted and maliciously orchestrated deprivation of freedom.

31) Defendants Officer L Cook (14717), OFFICER L LEON (12480), and OFFICER A WILEY (14519) with deliberate and knowing intent, propagated deliberate falsehoods regarding the Plaintiff's conduct within their police report with the fabrication that the Plaintiff "refused" to show them his son. This calculated dissemination of false information not only perpetuated a distorted narrative surrounding the events but, more significantly, inflicted irreparable damage upon the Plaintiff's reputation within his community. Such egregious misconduct on the part of the officers constitutes a reprehensible violation of trust and an unconscionable assault on the Plaintiff's standing in the community, demanding the most stringent censure and legal redress.

32) Defendants Officer L Cook (14717), OFFICER L LEON (12480), and OFFICER A WILEY (14519) egregiously employed  false and fabricated statement(s) in the police report as the purported basis to establish probable cause for the detainment of the Plaintiff. This blatant violation of constitutional and legal standards not only compromises the integrity of the legal process but also implicates the named officers in a serious breach of their duty to uphold the law and protect the rights of individuals.

This deliberate manipulation of  statement(s) to fabricate probable cause not only constitutes a flagrant violation of the Plaintiff's Fourth Amendment rights but also undermines the bedrock principles of due process. By contriving false, and fabricated statement(s), the named officers have compromised the trust and faith that the public places in law enforcement to adhere to lawful and ethical standards.

Furthermore, the use of such illicit tactics raises profound concerns about the broader practices and culture within the police department, as it suggests a pattern of misconduct and a systemic failure to adhere to legal and constitutional standards. Given the gravity of these violations, it is imperative to subject the actions of the defendant officers to thorough legal scrutiny, ensuring accountability for their egregious transgressions and upholding the principles that underpin the justice system.

33) Against defendants Officer L Cook (14717), OFFICER L LEON (12480), and OFFICER A WILEY (14519) Plaintiff brings claims for civil rights violations under the 5th Amendment Due Process; the reckless disregard of exculpatory evidence favoring the Plaintiff submitted by Memphis Police Department officer Officer W. Urbanski- memo#2302008870ME; the reckless disregard of exculpatory evidence favoring the Plaintiff submitted by Collierville Police Lieutenant John Harold Banks- police report # 230908; police misconduct; false arrest; malicious prosecution with the intent to publicly humiliate the Plaintiff; abuse of process; abuse of authority; excessive and unnecessary force; police brutality; Terror- ( IIED) intentional infliction of emotional distress, defamation of character; reputation harm.

14

34)  In the matter at hand, the plaintiff has diligently and repeatedly sought access to the high-quality video footage captured by police body cameras during the pertinent incident from the City of Memphis Public Record Office. Regrettably, these earnest requests have been met with a persistent pattern of stalling and undue delays, ostensibly suggestive of a deliberate intent to extend proceedings beyond the statutory limitations period. This deliberate obstruction by the City of Memphis constitutes a violation of legal obligations under public records laws, impeding transparency and obstructing the plaintiff's right to access information that is of public interest. Such actions not only contravene established legal procedures but also give rise to serious concerns of a conspiracy involving the Public Records Office, the Memphis Police Department, the Mayor's office, and the City of Memphis. This concerted effort appears aimed at concealing and protecting potentially illicit actions undertaken by Memphis Police Department officers, thereby compounding the gravity of the transgressions at hand. This conduct has been apart of the City of Memphis pattern or practice which is why after the Plaintiff filed a Department of Justice complaint against the Memphis Police Department on February 24,2023; five months and three days later, on July 27,2023 the Justice Department officially "opened a civil pattern or practice investigation into the City of Memphis and the Memphis Police Department (MPD)."

In the DOJ complaint, the plaintiff astutely remarked on his initial interaction with MPD Internal Affairs Lieutenant, Lt. Johnson, stating, "I told Lt. Johnson on my first call the #1 problem with MPD is they have lowered the standards and are hiring too many young black street thugs. Lt. Johnson basically agreed, saying 'I came in under the old standards when the qualifications were higher but they needed more officers and they lowered the standards and let anybody in.' It is obvious the 3 African American officers I encountered came from the lower standards."

Regrettably, the same Lt. Johnson, purportedly representing MPD Internal Affairs, engaged in duplicitous conduct by attempting to mislead the plaintiff and conceal civil rights violations committed by defendants Officer L Cook (14717), Officer L Leon (12480), and Officer A Wiley (14519) against the plaintiff. On February 22, 2023, Lt. Johnson, provided the Plaintiff with a complaint number, T2023-079, and was then informed by Lt. Johnson that he "considered the case closed" and advised the plaintiff to "get a copy from central records." On February 23, 2023, the plaintiff left a voicemail for Lt. Johnson, and Internal Affairs secretary Amy also left a voicemail.

On February 24, 2023, the plaintiff made another call to Lt. Johnson, leaving yet another voicemail. During this interaction, he spoke with Amy, who candidly admitted that Lt. Johnson had deceived the plaintiff by falsely asserting that central records would not release report # T2023-079 because the case was purportedly still under investigation. These actions not only undermine the integrity of MPD Internal Affairs but also highlight a concerning pattern of deceit and obfuscation within the Memphis Police Department, suggesting systemic corruption within the organization.

35) In response to these circumstances, Plaintiff has judiciously lodged a formal complaint against defendants Officer L Cook (14717), OFFICER L LEON (12480), and OFFICER A WILEY (14519)  through proper channels, including Internal Affairs. Despite earnest efforts, Plaintiff's pursuit for redress has been thwarted by the systemic lapse in the supervision of Memphis Police Department law enforcement officers and a demonstrated reluctance to enforce accountability, as outlined by the Department of Justice.

36) The Plaintiff is apprised and reasonably believes that his complaints are not afforded the due consideration mandated by law, as evidenced by a series of inquiries that have been consistently met with avoidance, evasion, or outright disregard. This pattern of conduct raises serious concerns about the lack of genuine consideration and due process, undermining the Plaintiff's confidence in the fair and impartial adjudication of his grievances by the respective authorities.

37) The right to be free from unlawful seizure is unequivocally enshrined in Tennessee jurisprudence, and a reasonable officer, operating under the totality of circumstances, would have unequivocally comprehended that effecting an arrest absent the requisite presence of probable cause was patently and objectively unreasonable. This blatant deviation from established legal standards, as delineated by Tennessee law, underscores a serious breach of duty and warrants unambiguous censure.

38) Sunday February 19, 2023, on the very evening of the defendants' callous assault against the Plaintiff, he and his church member, Tamera Burnett, diligently pursued justice by visiting the Ridgeway Station. There, a formal complaint was lodged with Lt. D. Hopkins, who, in a commendably professional manner, assured the Plaintiff that he would meticulously document the complaint, rendering it a memorandum. Lt. Hopkins further conveyed his commitment to initiating a potential internal affairs investigation.

39) The subsequent day, Monday February 20, 2023, the Plaintiff, seeking to ensure the due

progression of his grievance, contacted Internal Affairs and engaged in conversation with Lt. Johnson. However, to the Plaintiff's astonishment, Lt. Johnson asserted that no additional complaint was necessary.

40) On Wednesday, February 22, 2023 Lt. Johnson contacted the Plaintiff with a report number, hastily concluding the call and unequivocally indicating that, in his perspective, the case was closed. He suggested that the Plaintiff obtain a copy of the report from central records.

41) Undeterred by the lack of transparency in the process, the Plaintiff personally journeyed to Central Records. While all other reports were retrievable, notably absent was his own complaint. This glaring anomaly prompted the Plaintiff to promptly reestablish contact with Internal Affairs, seeking Lt. Johnson. Surprisingly, Lt. Johnson was suddenly unavailable, raising serious concerns about the integrity of the process.

These events, when viewed collectively, underscore a deeply troubling pattern indicative of systemic corruption within both the defendant police department and the defendant City of Memphis, as the Plaintiff earnestly sought justice but encountered deliberate obfuscation and evasive conduct at every turn.

42) The Defendant City of Memphis, through its negligent supervision practices, culpably fails to exercise due diligence in overseeing its officers and systematically refrains from scrutinizing their conduct in the context of investigations. This dereliction of duty, in the City's omission to assess and rectify the conduct of its officers, establishes a foundational basis for potential legal violations, underscoring the City's complicity in the actions of its law enforcement agents. Such a blatant disregard for oversight and accountability not only endangers the public but also constitutes a clear breach of the City's legal obligations, warranting robust legal scrutiny and redress.

This systemic failure to supervise and evaluate the conduct of officers further implicates the City in potential violations of constitutional rights, as the neglectful approach allows for unchecked and potentially unlawful actions by its law enforcement personnel. The City's deliberate indifference to the need for comprehensive review and corrective measures regarding officer conduct exacerbates the severity of the situation, perpetuating a culture of impunity and legal non-compliance within its law enforcement apparatus.

Consequently, the City's negligent supervisory practices, coupled with its conscious decision not to address officer conduct, not only contravene legal standards but also contribute to an environment where constitutional violations may persist unchecked. This failure to rectify systemic deficiencies underscores the urgent necessity for legal intervention to compel the City to fulfill its duty to supervise, evaluate, and rectify the conduct of its officers, ensuring compliance with constitutional standards and safeguarding the rights of its residents.

43) The Plaintiff is equipped to substantiate all assertions articulated herein through the presentation of witness affidavits, official police body camera evidence, and supplementary evidence that will be procured during the Discovery phase. This proactive approach is necessitated by the City's recalcitrant refusal to furnish the requisite evidence, thereby compelling the Plaintiff to resort to lawful means to obtain the pertinent information essential for a comprehensive and just adjudication of the matter.

This non-compliance with legal obligations by the City accentuates the gravity of the Plaintiff's claims and underscores the imperative for legal intervention to rectify the obstructionist stance adopted by the opposing party. The City's refusal to provide mandated evidence not only obstructs the pursuit of truth in this matter but also raises serious questions about transparency, accountability, and adherence to legal obligations within its operations.

The Plaintiff anticipates that the evidence obtained during Discovery will further illuminate the extent of the defendants' misconduct, the City's complicity, and the systemic issues that may be at play. Through the legal process, the Plaintiff seeks not only redress for the injuries suffered but also a thorough examination of the facts, which the City's non-compliance has hindered thus far. The pursuit of justice demands a comprehensive and unbiased evaluation of all exculpatory evidence, and the Plaintiff remains steadfast in ensuring the legal process unfolds with due diligence and integrity.

44)  Plaintiff alleges that pursuant to T.C.A. 29-20-20 (a) municipalities and governmental entities are generally immune from suit.

45)  Plaintiff alleges however that based upon the conduct of the governmental employees, Defendant City, and pursuant to T.C.A. 29-20-205 (1) (2), the Tennessee Governmental Tort Liability Act immunity is removed from Defendant City.

46) Plaintiff alleges the defendants Officer L Cook (14717), OFFICER L LEON (12480), and OFFICER A WILEY (14519 in their individual capacities and as agents of the City of Memphis, as well as the City of Memphis, violated his civil rights under the Fourth, Fifth, and Fourteenth Amendments, pursuant to 42 U.S.C. §§ 1983 and 1988.

47)  Plaintiff is informed and believes that the city through its leadership has developed a pattern of purging high quality well trained Professional Officers and replacing them with novice ill experienced individuals who are subsequently inadequately trained.

48)  Plaintiff I informed and believes (1) that the City's training program is inadequate to the tasks that the officers must perform; (2) that the

inadequacy is the result of the City's deliberate indifference; and (3) that the inadequacy
is closely related to or actually caused the plaintiff's injury.

49)  Plaintiff claims the city via its sham of an Internal Affairs Unit engages regularly in
procedures that fail to investigate and reprimand or discipline. Instead, they offer a charade of
actions that amount to smoke, and mirrors designed to dissuade the complainant. This is a
demonstration of deliberate indifference that shows a history of widespread abuse that has been
ignored by the city.

50)  Plaintiff charges and alleges that Defendants are guilty of the following acts of common law
negligence, each and every one of which being a direct and proximate cause of the injuries suffered
by Plaintiff, to wit:

>   Negligently and/or recklessly failing to exercise that degree of care and caution
>   required of a reasonable and prudent Memphis Police Department officer under the
>   same or similar circumstances.

>   Negligently and/or recklessly pursued Plaintiff during the Plaintiff's Course of a Public
>   Appearance, the basis of his livelihood without any reasonable support under the law or
>   the Constitution.

>   Negligently and/or recklessly performed these acts with the implied agreement and
>   approval of each of the other officers present.

51) Plaintiff suffered emotional distress, mental anguish, and was deprived of his liberty.

52)· Plaintiff lost a noticeable percentage of his congregation which is measurable in multiple ways including weekly sermon attendance as well as a lack of city-wide support since the incident.

53) Plaintiff is seeing a Counselor twice weekly in an attempt to work through the impact this traumatic experience has had on him.

54) Defendants Officer L Cook (14717), OFFICER L LEON (12480), and OFFICER A WILEY (14519) direct supervisor Lieutenant, LT WILBURN (4451) made the scene and apologized to the Plaintiff for the harm caused by and for the misconduct of Defendants Officer L Cook (14717), OFFICER L LEON (12480), and OFFICER A WILEY (14519).

55) Contrary to Memphis Police Department's own Mission statement which
   promises a "public safety partnership" with the community, the reverse effect has begun
   when Plaintiff, a beloved Pastor who regularly has played

an important role in assisting the Police with crime reduction was violated in front of his entire congregation.

56) A municipality may be liable in a § 1983 suit if the plaintiff can show the challenged action occurred pursuant to an officially executed policy or toleration of a custom that leads to, causes, or results in the deprivation of a constitutionally protected right.

57) Plaintiff has been discussed in a disparaging manner because of the high- profile incident on social media.

58) Defendants Officer L Cook (14717), OFFICER L LEON (12480), and OFFICER A WILEY (14519)  conduct has caused Plaintiff to be detained and defrauded, based on violations of State and Constitutional law.

59) Plaintiff suffered emotional distress, mental anguish, ongoing public humiliation and was deprived of his liberty.

## **PRAYER FOR RELIEF**

24

A. Plaintiff is seeking damages of no less than $100,000,000 but in an amount ultimately to be proven at trial, including but not limited to:

a. Compensatory damages, including for injury to person, lost of income, lost business opportunities, and loss of reputation; and

b. Punitive damages.

B. An award of reasonable fees, cost, and expenses to Plaintiff, pursuant to 42 U.S.C.§ 1988, in an amount to be proven at trial;

C. For cost of suit herein incurred;

D. Pre- judgment interest;

E. Such other and further relief as this Court shall find just and proper

Dated: December 27, 2023

Respectfully Submitted,

Rev. Gerald Kiner, In Pro Se

DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: December 27,2023

25

Respectfully Submitted,

Rev. Gerald Kiner, In Pro Se