**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| GERALD KINER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:23-cv-02805-SHL-tmp |
| | ) | |
| CITY OF MEMPHIS, et al., | ) | |
|     Defendants. | ) | |

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION AND
DISMISSING COMPLAINT**

Plaintiff Gerald Kiner filed a pro se complaint against the City of Memphis, among other

Defendants.[1]  (See generally ECF No. 2.)  The City seeks to dismiss the complaint for failure to

state a claim.  (ECF No. 103 at PageID 696–97.)  In a report and recommendation, Chief

Magistrate Judge Pham recommends that the motion be granted and the complaint dismissed

under Federal Rule of Civil Procedure 12(b)(6).[2]  (ECF No. 163.)  Because this Court agrees that

Kiner has not stated a claim upon which relief can be granted, the R&R is **ADOPTED IN PART**

---

[1] Kiner voluntarily dismissed Defendants Allison Fouche, the Chief Communications Officer for
the City of Memphis; Jennifer Sink, the former Chief Legal Officer of the City; Jim Strickland,
the former Mayor; and Cerelyn "C.J." Davis, the Chief of the Memphis Police Department, in
their individual and official capacities.  (ECF Nos. 46, 58.)  Kiner reached a settlement of all his
claims against Defendants Officer L. Cook, Officer L. Leon, and Officer A. Wiley (ECF Nos.
118, 119), and they were later dismissed (ECF No. 120).  The only remaining Defendants are the
City and the MPD.  Because the MPD is itself the City, they will be construed as one and the
same.

[2] The R&R also addresses Kiner's motion to take judicial notice of the Department of Justice's
2024 finding that the MPD has a pattern and practice of violating citizens' civil rights.  (ECF No.
163 at PageID 1426–31.)  But after Judge Pham recommended granting Kiner's motion, the DOJ
retracted those findings, and they are now defunct.  See Office of Public Affairs, The U.S.
Department of Justice's Civil Rights Division Dismisses Biden-Era Police Investigations and
Proposed Police Consent Decrees in Louisville and Minneapolis, U.S. Dep't of Just. (May 21,
2025), https://www.justice.gov/opa/pr/us-department-justices-civil-rights-division-dismisses-
biden-era-police-investigations-and.  Thus, the Court declines to adopt that portion of the R&R,
and Kiner's motion is **DENIED AS MOOT**.

and Kiner's complaint is **DISMISSED WITH PREJUDICE**.

## BACKGROUND[3]

Kiner called the Collierville Police Department after a verbal altercation with the mother and custodial parent of his minor son. (ECF No. 2 at ¶ 21.) Lieutenant Banks responded and permitted Kiner to take his son to his Harbor Town residence in Memphis. (Id.) The mother immediately filed a report with the Memphis Police Department alleging that Kiner removed their son without her authorization. (Id.) She arrived at the Harbor Town residence with MPD Officer Urbanski. (Id. at ¶ 22.) Kiner spoke to Officer Urbanski through a Ring doorbell camera.[4] (Id.) The officer addressed the situation, documented that the child was safe, and left. (Id.)

The next morning, the mother filed another complaint with the MPD. (Id. at ¶ 23.) She again traveled to the Harbor Town home—this time accompanied by Officers L. Cook, L. Leon, and A. Wiley. (Id.) They arrived at the residence while Kiner was at church, which was a minute away. (Id.) After a church member informed Kiner of their presence at his home, he left the service to speak to them. (Id.) Kiner alleges that the officers "exhibited a seemingly predetermined inclination to align with the mother's narrative," which "culminated in [D]efendants' unwarranted request to see the child." (Id.)

Kiner attempted to comply with the officers' request. (Id.) Though he did not have his keys with him at the time, Kiner knocked on the door to see if the nanny would let them inside. (Id.) No one answered. (Id.) Kiner told the officers that he believed the nanny and his son were

---

[3] The facts are taken from Kiner's complaint and are accepted as true for purposes of addressing the City's motion to dismiss.

[4] Although Kiner alleges that the mother and Officer Urbanski arrived at the home before he did (ECF No. 2 at ¶ 22), he does not clarify whether he spoke to them as he got out of his vehicle and entered the home.

asleep.  (Id.)  He stated that he would need to return to the church to preach his sermon and

would return afterwards with his keys.  (Id.)  Kiner alleges that the officers did not object and

allowed him to leave.  (Id.)

Despite allowing him to leave, Kiner asserts that the officers went to his church, "bum

rush[ed]" him while he was preaching his sermon, and handcuffed him in front of his entire

congregation.  (Id.)  They forcefully removed him from the pulpit and took him back to his

home, where they allegedly "coerced" Kiner into opening the door, "seized" his son, and

returned him to his custodial parent.  (Id. at ¶¶ 23, 25.)  They released Kiner about an hour later.

(Id. at 23.)  Kiner states that Officer L. Cook lied in her police report when she said that Kiner

refused to show them the child.  (Id.)

As a result of this incident, Kiner filed suit under § 1983 for violations of his Fourth,

Fifth, and Fourteenth Amendment rights, and/or for false imprisonment, false arrest, fraudulent

concealment, negligence, malicious harassment, conspiracy, and spoliation of evidence.[5]  (Id. at

¶ 1.)  He alleges that the City engaged in "negligent supervisory practices" and exhibited a

"systemic failure to supervise and evaluate the conduct of officers."  (Id. at ¶ 42.)   The City

seeks to dismiss the complaint under Rule 12(b)(6), arguing that Kiner has not sufficiently

alleged municipal liability because he does not point to any specific policy or custom giving rise

to the civil rights violations he asserts.  (ECF No. 163 at PageID 1424–25.)  The R&R agrees

with the City, and this Court agrees with the R&R.

---

[5] Because Kiner groups the state law claims with his § 1983 claim, it is unclear whether the state
claims are intended to be brought under § 1983 or as separate state law claims.  The R&R
addresses them as both § 1983 claims and as independent state law claims, so this Court follows
suit out of an abundance of caution.

## APPLICABLE LAW

A magistrate judge may submit to a judge of the court proposed findings of fact and recommendations that assist in the determination of certain pretrial matters. 28 U.S.C. § 636(b)(1)(A)–(B). "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1). When a party objects to an R&R, his objections must be specific. Thomas v. Arn, 474 U.S. 140, 151 (1985). An objection is specific if it enables the court to focus on the factual and legal issues "that are at the heart of the parties' dispute." Jackson v. Social Sec. Admin., No. 3:20-cv-00818, 2021 WL 8013869, at *1 (M.D. Tenn. Sept. 8, 2021) (quoting Thomas, 474 U.S. at 147). "General or conclusory objections are insufficient." Weeks-Israel v. U.S. Army Recruiting Suffolk, No. 3:18-cv-00317, 2019 WL 4963251, at *1 (M.D. Tenn. Oct. 8, 2019) (citing Zimmerman v. Cason, 354 F. Appx. 228, 230 (6th Cir. 2009)).

An objection is general and conclusory when it "does nothing more than state a disagreement with a magistrate's suggested resolution," VanDriver v. Martin, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004), or when it does not identify a specific error made by the magistrate judge, Parker v. Hankook Tire Manuf. Tenn., LP, No. 3:22-cv-00063, 2023 WL 2390672, at *1 (M.D. Tenn. Mar. 7, 2023) (citing Howard v. Sec. of Health & Hum. Servs., 932 F.2d 505, 509 (6th Cir. 1991)). A district court reviews de novo only those proposed findings of fact or conclusions of law to which a party specifically objects; the rest are reviewed for clear error. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

## ANALYSIS

The R&R first recommends dismissal of any non-constitutional claims asserted under §

4

1983 as non-cognizable.  (ECF No. 163 at PageID 1436–37.)  It then reasons that Kiner has not

pled sufficient facts to support a Fifth Amendment claim against the City because the Due

Process Clause only limits the actions of the federal government, not the local government, and

Kiner's brief reference to a <u>Miranda</u> violation cannot form the basis of a § 1983 claim.  (<u>Id.</u> at

PageID 1436–37.)  The R&R also concludes that Kiner has not sufficiently alleged a violation of

his Fourth and Fourteenth Amendment rights because (1) he does not allege similar

constitutional violations to support a theory of failure to train or supervise, and (2) he does not

allege sufficient evidence to support his theory that the City has a custom of tolerating civil

rights violations.  (<u>Id.</u> at PageID 1437–47.)  Finally, the R&R recommends dismissal of Kiner's

state law claims because they are not cognizable under the TGTLA.  (<u>Id.</u> at PageID 1447–49.)

　　　After finding that Kiner's objections are either meritless or too general to warrant de

novo review, the Court reviews the R&R for clear error and finds none.

## I.    OBJECTIONS TO THE R&R

　　　Kiner filed ten different objections to the R&R, most of which demonstrate a

fundamental misunderstanding of the proceedings or blatantly misstate the record and the law.

(<u>See</u> ECF No. 164.)  For example, in his second objection, Kiner argues that Judge Pham erred in

recommending dismissal of his <u>Monell</u> claims before discovery could reveal information to

support his allegations, but that is precisely the function of a Rule 12(b)(6) motion.  (<u>Id.</u> at

PageID 1454.)  In a similar fashion, Kiner's seventh and eighth objections assert that Judge

Pham failed to consider evidence that is not contained within the complaint, such as his sealed

medical records and sworn testimony from the officers involved,[6] even though Judge Pham is

---

[6] The City asserts that it has no knowledge of these alleged sworn disclosures, if they exist.
(ECF No. 171 at PageID 1545 n.1.)

only permitted to consider the allegations within the four corners of Kiner's pleading at this stage. (Id. at PageID 1458–62.) And in his sixth objection, Kiner asserts that Judge Pham's recommendation for dismissal contradicts his earlier finding that the merits of the case were strong—a finding that does not exist in any order entered to date.[7] (Id. at PageID 1456–57.)

In addition to misstating the record, Kiner also misstates the law. In his third and fifth objections, he argues that the TGTLA does not provide immunity for willful misconduct or civil rights violations. (Id. at PageID 1454–55; id. at PageID 1455–56.) But the TGTLA explicitly allows the City to retain immunity if the injury arises out of false imprisonment, false arrest, intentional misrepresentation, malicious prosecution, and a violation of civil rights. Tenn. Code Ann. § 29-20-205(2), (6). Thus, these objections are without merit.

As he has done throughout this litigation, Kiner continues to argue that Judge Pham has ignored the principles outlined in Haines v. Kerner, 404 U.S. 519 (1972), which Kiner construes as authority allowing him to ignore procedural rules and the laws interpreting them. But Haines did not hold that pro se litigants are entitled to proceed to discovery even if they have not stated a claim—the plaintiff in that case was allowed to proceed precisely because he did state a claim, even if it was "inartfully pleaded." Id. at 520–21. Though pro se plaintiffs are held to "less stringent standards," they must still plead sufficient facts to state a claim to relief. Id. Kiner's argument that his case should be allowed to proceed regardless of any "technical missteps or procedural imperfections" relies on an incorrect characterization of the faults at issue with his complaint. (See ECF No. 164 at PageID 1462–63.)

The remainder of Kiner's objections are too general or conclusory to support heighted

---

[7] As the City points out, Judge Pham explicitly withheld making a finding about the merits of the case. (ECF No. 171 at PageID 1548 (quoting ECF No. 23 at PageID 93 ("The undersigned makes no assessment as to the merits of the plaintiff's claims . . . .")).)

review of the R&R.  In his first objection, Kiner argues that Judge Pham failed to give proper weight to his allegation that one of the officers lied in a police report after the incident.  (Id. at PageID 1452–54.)  But Kiner does not explain how and why the R&R's alleged failure to consider the false report changes the outcome here, and he ignores the fact that the R&R does explicitly reference this allegation in its analysis of his Fourth and Fourteenth Amendment claims.[8]  Instead, he simply asserts that this report is "central to understanding the misconduct" at issue and is "indispensable" to addressing his claims, without connecting this alleged misconduct to a policy or custom that would give rise to a claim against the City.  (Id. at PageID 1453–54.)  Kiner's conclusory arguments do not sufficiently identify any alleged error in the R&R.  See Boykin v. Methodist Le Bonheur Healthcare, No. 2:23-cv-02629-MSN-cgc, 2024 WL 4326821, at *1 (W.D. Tenn. Sept. 26, 2024) (citing Howard v. Sec'y of Health & Human Servs., 932 F.2d 505, 509 (6th Cir. 1991)) ("Each objection to the magistrate judge's recommendation should include how the analysis is wrong, why it was wrong, and how *de novo* review will obtain a different result on that particular issue.").

Finally, in his tenth objection, Kiner repeats his previous unsupported assertions that Judge Pham is somehow biased in favor of the City and should recuse himself.  (ECF No. 164 at PageID 1464–67.)  He asserts that the City's attempt to obtain his consent to magistrate jurisdiction "raises concerns" about Judge Pham's partiality, especially since he is "known for his pro-government stance."  (Id. at PageID 1465.)  This objection is baseless, and Kiner's ad

---

[8] Kiner makes a fleeting reference to the Supreme Court's holding in Franks v. Delaware, 438 U.S. 154 (1978), a criminal case in which the Court addressed whether a defendant has the right to challenge the truthfulness of factual statements made in an ex parte affidavit supporting an arrest warrant.  (ECF No. 164 at PageID 1469; ECF No. 172 at PageID 1557.)  That case is inapposite here, where the question is whether Kiner has alleged sufficient facts to support municipal liability under § 1983.

hominem attacks against Judge Pham are not well-taken, do not comport with the manner in which objections must be raised, and curry no favor with this Court.

## II.    CLEAR ERROR REVIEW

Without any specific objections, the Court reviews the R&R for clear error.  This Court agrees with the R&R that Kiner has failed to state any claim here, and thus it does not reach his fourth objection relating to his claim for punitive damages because there is no longer any claim to support damages at all.

### A.    Non-Constitutional Claims

As a threshold matter, the R&R correctly reasons that, to the extent Kiner attempts to allege non-constitutional tort claims under § 1983, those claims are not cognizable.  (ECF No. 163 at PageID 1435.)  Kiner appears to associate his claims for false imprisonment, false arrest, fraudulent concealment, negligence, malicious harassment, conspiracy, and spoliation of evidence with his § 1983 claim.  (See ECF No. 2 at PageID 4.)  But, as the R&R correctly asserts, § 1983 only provides a cause of action "for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."  (ECF No. 163 at PageID 1346 (citing Baker v. McCollan, 443 U.S. 137, 146 (1979)).)  Thus, Kiner's tort claims against the City under § 1983 are **DISMISSED**.

### B.    Fifth Amendment Claim

The R&R also correctly finds that Kiner has not pled sufficient facts to support a § 1983 claim under the Fifth Amendment.  (See id. at PageID 1436–37.)  Without any further explanation, Kiner summarily alleges that officers "ruthlessly" refused to read him his Miranda rights and violated his Fifth Amendment right to due process.  (Id. at PageID 1436 (citing ECF No. 2 at PageID 12, 15).)  As the R&R recognizes, Kiner cannot pursue a due process claim

under the Fifth Amendment because such a claim can only arise out of actions taken by the federal government, not a local government like the City.  (Id.)  And a potential <u>Miranda</u> violation "is not itself a violation of the Fifth Amendment."  (Id. at PageID 1437 (quoting <u>Vega v. Tekoh</u>, 597 U.S. 134, 152 (2022)).)  Thus, the R&R reasons that any <u>Miranda</u> violation here does not confer a right to sue under § 1983.  (Id. (citing <u>Vega</u>, 597 U.S. at 152).)  There being no clear error, Kiner's Fifth Amendment claim is **DISMISSED**.

   C. <u>Fourth and Fourteenth Amendment Claims</u>

   The R&R concludes that Kiner has not pled sufficient facts to support his claims under the Fourth and Fourteenth Amendment.  (Id. at PageID 1437–47.)  It correctly construes Kiner's complaint as alleging two different theories of municipal liability: failure to train or supervise and a custom of tolerance.  (Id. at PageID 1437–38.)  The Court addresses each in turn.

   1. Failure to Train or Supervise

   The R&R lays out the correct standard for a failure to train theory.  (Id. at PageID 1438.) To state a claim, Kiner must allege "(1) that a training program is inadequate to the risks that the officers must perform; (2) that the inadequacy is the result of the [City's] deliberate indifference; and (3) that the inadequacy is closely related to or actually caused the plaintiff's injury."  (Id. (quoting <u>Doe v. Shelby Cnty. Gov't</u>, No. 2:18-cv-02637-JPM-tmp, 2020 WL 5995507, at *9 (W.D. Tenn. Oct. 9, 2020)).)  The R&R reasons that Kiner has failed to sufficiently plead deliberate indifference because he has not alleged "any discrete examples of similar constitutional violations within the four corners of his complaint."  (Id. at PageID 1441.) Instead, Kiner relies on references to "'potential' violations that could result from" allegedly negligent practices—he does not identify any "concrete pattern of actual, prior conduct."  (Id. (quoting ECF No. 2 at PageID 20).)

This failure is fatal to Kiner's failure to train theory.  As the R&R recognizes, a plaintiff's

single incident cannot support a finding of municipal liability—otherwise, the municipal liability

standard would collapse into a simple respondeat superior standard.  (Id. at PageID 1442

(quoting Doe, 2020 WL 5995507, at *7).)  This "path to municipal liability has been forbidden

by the Supreme Court," and the R&R recommends that it be forbidden here.  This Court agrees.

Kiner's § 1983 claim for violations of the Fourth and Fourteenth Amendment under a theory of

failure to supervise or train is **DISMISSED**.

### 2.    Custom of Tolerance

Unlike his first theory of municipal liability, Kiner's second theory does not require a

showing of prior violations.  (Id. at PageID 1446.)  The R&R correctly recognizes that, to state a

claim that the City exhibited a custom of tolerance to civil rights violations, Kiner must allege

"(1) a clear and persistent pattern of illegal activity, (2) which [the City] knew or should have

known about, (3) yet remained deliberately indifferent about, and (4) that [the City's] custom

was the cause of [the constitutional violation]."  (Id. at PageID 1438–39 (citing Doe, 2020 WL

5995507, at *7).)  But this theory of liability "is only available 'in a narrow range of

circumstances' where a particular rights deprivation 'may be a highly predictable consequence of

a failure to equip [employees] with specific tools to handle recurring situations."  (Id. at PageID

1446 (quoting Franklin v. Franklin Cnty., 115 F.4th 461, 474 (6th Cir. 2024)).)

This Court agrees with the R&R that these narrow circumstances are not present here.

The R&R reasons that Kiner has not alleged any evidence that the circumstances of his

detainment "are so recurrent that they represent a 'highly predictable consequence' of the MPD's

inadequate training."  (Id. at PageID 1446–47 (quoting Franklin, 115 F.4th at 474).)  Because

Kiner has not alleged sufficient facts to support his theory that the City has a custom of tolerating

10

civil rights violations, the remainder of his § 1983 claim for violations of his Fourth and Fourteenth Amendment rights is **DISMISSED**.

        D.    <u>State Law Claims</u>

Finally, Judge Pham addresses Kiner's state law claims under the TGTLA.  (<u>Id.</u> at PageID 1447–49.)  While the TGTLA "strips Tennessee governmental entities of their immunity from suit for civil claims sounding in negligence," the R&R correctly recognizes that it provides multiple exceptions to this rule, including most of Kiner's claims here.  (<u>Id.</u> at PageID 1447–48.)  Because the TGTLA explicitly provides immunity for claims arising out of the failure to exercise or perform a discretionary function, false imprisonment, false arrest, and civil rights violations, Kiner cannot assert those claims here.

The Court also agrees with the R&R that Kiner "cannot circumvent a defendant's immunity by couching [his] civil rights claim as one of negligence."  (<u>Id.</u> at PageID 1448 (quoting <u>Tinkle v. Dyer Cnty.</u>, No. 18-01124-STA-egb, 2018 WL 6840155, at *2 (W.D. Tenn. Dec. 31, 2018)).)  Because his claims for negligence "arise out of the same facts and circumstances as [his] civil rights claims under § 1983, they fall within the civil rights exception to the waiver of immunity set forth in the [TGTLA] and must be dismissed."  (<u>Id.</u> (quoting <u>Tinkle</u>, 2018 WL 6840155, at *2).)  Thus, all of Kiner's state law claims are **DISMISSED**.

<u>**CONCLUSION**</u>

Finding no clear error in the R&R, it is **ADOPTED IN PART**.  The City's motion to dismiss is **GRANTED** and Kiner's complaint is **DISMISSED WITH PREJUDICE** for failure to state a claim.  The pretrial conference on June 20 and the trial on June 30 are cancelled.

11

**IT IS SO ORDERED,** this 3rd day of June, 2025.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
CHIEF UNITED STATES DISTRICT JUDGE